UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:24CR572 SEP/JSD |
| ) | |
| SHIRLEY WALLER, ) | |
| ) | |
| Defendant. ) | |

**INDICTMENT**

The Grand Jury Charges:

**COUNTS ONE THROUGH THREE**
(Wire Fraud)

**A. Introduction of Paycheck Protection Program Fraud Scheme**

1. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

2. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the

1

business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

3. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

4. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers (1) for traveling expenses, (2) to purchase consumer goods, automobiles, personal residences, clothing, jewelry, (3) to pay the borrower's personal federal income taxes, or (4) to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

5. The SBA offered loan forgiveness for businesses that used the proceeds in compliance with the PPP rules such as for payroll costs and proprietor expenses.

**B.    The Scheme to Defraud**

5. It was part of the scheme and artifice to defraud and to obtain money and property that Defendant submitted a PPP loan application to Cross River Bank and a PPP loan application to Prestamos CDFI LLC, as well as an application to have the Cross River Bank PPP loan forgiven.

2

6.  On April 10, 2021, Defendant submitted SBA Form 2483-C titled "Paycheck Protection Program Borrower Application Form for Schedule C Filers Using Gross Income" to Cross River Bank, a third party lender, falsely asserting the following:

   a.  Defendant, a resident of Missouri, was the sole employee of a business she operated in Battle Creek, Michigan;

   b.  The purpose of the PPP loans was to assist with payroll costs;

   c.  Defendant was not the owner of any other business;

   d.  All loan proceeds would be used only for business-related purposes as specified in the loan application and the PPP Rules;

   e.  Defendant was in operation on February 15, 2020 and had not permanently closed;

   f.  The economic uncertainty of the pandemic made the loan necessary to support the defendant's purported self-employment in Michigan;

   g.  The loan proceeds would be used for payroll costs; and

   h.  Defendant reported a gross income of $92,331 from her 2019 IRS form 1040, Schedule C, Line 7.

7.  Acting in reliance on Defendant's false representations, Cross River Bank approved Defendant's loan application.

8.  On April 14, 2021, Defendant received $19,235 in SBA loan proceeds as a result of her fraudulent Cross River Bank PPP loan application.

9.  Defendant used the proceeds of the PPP loan on non-business related expenses such

as personal flights to Accra, Ghana, Frankfort, Germany, and Montego Bay, Jamaica.

10. On April 29, 2021, through SBA Form 2483-SD-C titled "Paycheck Protection Program Second Draw Borrower Application Form for Schedule C Filers Using Gross Income," Defendant falsely asserted to Prestamos CDFI, LLC, a third party lender, the following:

   a. Defendant was the sole employee of Treehouse Resale Shop, a single-member limited liability corporation, that she operated in St. Louis, Missouri;

   b. Defendant had never obtained a direct or guaranteed loan from the SBA or any other Federal agency; and

   c. Defendant reported a gross income of $17,222 from her 2019 IRS form 1040, Schedule C, Line 7.

11. On or about January 3, 2022, Defendant applied for forgiveness of the $19,235 PPP loan she had obtained through third party lender Cross River Bank.

12. On or about January 3, 2022, in seeking forgiveness of the $19,235 PPP loan she received through her fraudulent application to Cross River Bank, Defendant falsely averred that she used the funds for eligible expenses according to the PPP rules.

13. Acting in reliance on Defendant's false representations, the SBA fully forgave Defendant's fraudulent PPP loan.

C.   **Wire Transmissions**

14. On or about the dates listed below, within the Eastern District of Missouri and elsewhere, the defendant,

**SHIRLEY WALLER,**

being aided, abetted, counseled, and induced by persons known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, did cause to be transmitted, by means of interstate wire transmissions to servers of the Small Business Administration which are located outside the Eastern District of Missouri, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343, as follows:

| Count | Date | Transmission |
| --- | --- | --- |
| 1 | April 10, 2021 | PPP Loan Application submitted to Cross River Bank |
| 2 | April 29, 2021 | PPP Loan Application submitted to Prestamos CDFI, LLC |
| 3 | January 3, 2022 | First Draw PPP Loan Forgiveness Application submitted to Cross River Bank |

## COUNT FOUR
(False Statement to a Financial Institution)

15. On or about May 14, 2022, within the Eastern District of Missouri, the defendant,

**SHIRLEY WALLER,**

knowingly made a false statement and report for the purpose of influencing the action of Celebrity Home Loans LLC, a mortgage lending business located in Illinois, in connection with a request for a home loan in an amount exceeding $196,000, in that Defendant submitted a fraudulent Uniform Residential Loan Application financial statement stating that she (1) was unmarried; (2) had been employed by Mid West Best LLC in St. Louis, Missouri since June 12, 2018; (3) earned a gross monthly income of $4,501 from Mid West Best LLC; (4) had been a professional cleaner

for 3 years and 10 months. In truth and in fact, as Defendant well knew; (1) at the time of her application, Defendant was married to a Nigerian national living in Lagos, Nigeria, (2) she was not employed by Mid West Best LLC, and (3) she had not been a professional cleaner for more than 3 years.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FIVE
(False Statement to a Financial Institution)

16. On or about May 14, 2022, within the Eastern District of Missouri, the defendant,

**SHIRLEY WALLER,**

knowingly submitted a counterfeit W-2 form for tax year 2021 that claimed earnings in the amount of $56,357.89 from Mid West Best One LLC and counterfeit paystubs for Mid West Best One LLC for the purpose of influencing the action of Celebrity Home Loans LLC, a mortgage lending business located in Illinois, in connection with a request for a home loan in an amount exceeding $196,000. In truth and fact, as Defendant well knew, the only W-2 issued in 2021 Defendant reported wages of $774 from a temporary employment agency.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT SIX
(Conspiracy to Commit Mail Fraud, Wire Fraud,
and Using an Assumed Name to Commit Mail Fraud)

**A.   Introduction**

17. Fraud schemes in which a perpetrator pretends to possess romantic intentions towards a victim in order to gain their affection, and entice them to send money and merchandise on the perpetrator's behalf, are known as "*Romance Scams*."

18. Victims are lured into the scams when the perpetrators use aliases and stolen photographs to create online dating profiles and social media accounts. The scammers claim to be in the military or working overseas to explain their inability to meet in person and to use video communication programs.

19. After grooming their victims, scammers create financial hardship scenarios necessitating requests for financial assistance. They will ask their victim to send money or merchandise, and conduct financial transactions on their behalf. Travel costs, airfare to meet the victims, and income tax liabilities are frequently used scenarios to solicit money from the victims.

20. Romance scammers enlist others to avoid detection by law enforcement and concerned family members. One role that others play is that of a "*mule*." A "mule" is a person who receives the fraudulently obtained money and merchandise on behalf of the scammer, and forwards the proceeds to the scammer. A mule can be a witting participant or a victim used to funnel proceeds to another mule.

**B.   Conspiracy**

21. Beginning on or about November 1, 2023 and continuing to on or about February 20, 2024, in the Eastern District of Missouri and elsewhere, the defendant,

**SHIRLEY WALLER,**

and persons, known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other and persons, known and unknown to the Grand Jury, to commit the following offenses against the United States:

- a. to use the mails, and private and commercial interstate carriers, in executing, and attempting to execute, a scheme and artifice to defraud in violation of Title 18, United States Code, Section 1341;

- b. to use a false, fictitious, and assumed name to engage in a mail fraud scheme in violation of Title 18, United States Code, Section 1342; and,

- c. to transmit and cause to be transmitted by means of wire communications in interstate commerce, any sounds and signals for the purpose of knowingly executing and attempting to execute, a scheme and artifice in violation of Title 18, United States Code, Section 1343.

**B.   Ways, Manner, and Means of the Conspiracy**

22. It was a part of the conspiracy that persons unknown to the Grand Jury, would by deceit, craft, trickery and dishonest means, induced T.B., a 71-year-old resident of St. Louis County, Missouri, to believe she was in an online relationship with a United States military surgeon deployed to the Middle East.

23. It was further part of the conspiracy that persons unknown to the Grand Jury electronically transmitted images of a counterfeit United States passport and photographs of her purported romantic interest.

8

24. It was further part of the conspiracy that persons unknown to the Grand Jury began inquiring about T.B.'s finances to ascertain if she could finance his return to the United States from the Middle East and to ship a medical securities box back to the United States.

25. It was further part of the conspiracy that persons unknown to the Grand Jury emailed T.B. an invoice for $25,500 for the shipment of a security box and a second invoice in the amount of $4,500 for the release of a hold purportedly imposed upon the security box by the United States Customs and Border Protection.

26. It was further part of the conspiracy that persons unknown to the Grand Jury instructed T.B. to wrap $30,000 in cash in Christmas wrapping paper and mail it in an express mail package to "Sheby Waller" at 769 Waterfall Avenue, Florissant, Missouri.

27. It was further part of the conspiracy that persons unknown to the Grand Jury persuaded T.B. to provide the postal service tracking number of the package of gift-wrapped cash.

28. It was further part of the conspiracy that persons unknown to the Grand Jury used several Nigerian IP addresses to track T.B.'s package 164 times in less than a 24-hour period.

29. It was further part of the conspiracy that, in a two-week period, at least 35 express mail packages addressed in derivations of Defendant's name and the names of others who did not reside within Defendant's home were tracked by Nigerian IP addresses.

30. It was further part of the conspiracy that persons unknown to the Grand Jury persuaded additional individuals who were over the age of 60 to send packages through the United States Postal Service and private and commercial interstate carriers addressed to variations on Defendant's name at 769 Waterfall Drive, Florissant, Missouri.

31. It was further part of the conspiracy that Defendant would accept delivery of the packages containing the proceeds of the romance fraud scheme and direct others to accept delivery of the packages.

32. It was further part of the conspiracy that Defendant would open the packages and forward the cash to persons unknown to the Grand Jury through cryptocurrency transactions and other means.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2)(A), 1014, 1341, and 1343, upon conviction of an offense in violation of Title 18, United States Code, Sections 1014, 1341, and 1343, as set forth in Counts 1 through 6, the defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of such violation(s) and any personal property used or intended to be used to commit the offense.

2. Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of the violations set forth in Counts 1 through 6.

3. If any of the property described above, as a result of any act or omission of the defendant(s):

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____

TRACY LYNN BERRY - 014753 TN
Assistant United States Attorney